on behalf of Appellant Leo Orn. Have you represented him throughout? That is to say, it's clear he went up and down a couple of times. Have you been with him the whole time? Correct, Your Honor, except I did not represent him at the administrative hearing before the administrative law judge. Either hearing before the ALJ? Correct. I see. So you came into the case when you come into the district court? Correct, Your Honor. Our contention is that the ALJ's decision is not supported by substantial evidence, and so much so that it is essentially arbitrary. And Mr. Orn, there's no dispute he suffers from severe asthma, chronic obstructive pulmonary disease, that he is obese, and that he has diabetes. He has two acknowledged treating physicians, Dr. Dorning and Dr. Nguyen, who have both supported disability. He cannot sustain full-time activity based upon these conditions. The ALJ discredited the opinion of the treating physicians, am I right? Correct. And he did so based on the examining physician, Dr. Kammerlew, however it's pronounced. Is that right? I would disagree with that, Your Honor. Okay. Explain. He gave specific reasons for rejecting their opinions, but they're not legitimate, and he did not refer to the C.E.'s assessment as a basis for rejecting the treating physicians. He just did not in the decision. It does not contain that. There's no mention at all of Dr. Kammerlew? There is a mention of Dr. Kammerlew, but not in the context of why his findings are inconsistent with the treating physician's findings. And, please let me point out, Dr. Kammerlew, the one-time examiner from Social Security, examined Mr. Orn two years prior to him being on 24-hour oxygen, two years prior to Dr. Nguyen's assessment that he cannot sustain activity, and one year prior to Dr. Nguyen Dorning's assessment. The judge did not point to the C.E.'s, Dr. Kammerlew's opinion to reject these doctors' opinions, but I would contend. Why did he refer to it, then? Well, in summarizing the medical evidence. And then he talks about the medical evidence and what it indicates. Correct. I'm never taken by the argument that they didn't pay any attention to something, that they write up in great detail in their opinions. Well, he did not write it up in great detail. And he, I can point to you. Claimant underwent a consultative internist examination on December 20th, performed by Dr. Kammerlew. And then he proceeds in great detail to specify all of the tests and all of the findings. Yes. And he also puts forth three particular stated grounds for rejecting Dr. Dorning's and Dr. Nguyen's assessments. And where is that? Those at AR 26 for Dr. Dorning. And where are you with this? I think I'm on AR 26. Maybe give us the internal pages of the actual ALJ decision. 9 of 14? Yes. Accordingly, he says, having considered the entire record, both medical and non-medical, and specifically including the claimant's testimony and demeanor. That's referring to credibility, I believe. Well, how many times does he have to say he considered the entire record, both medical and non-medical? Saying that he considers the entire record, I would say, is saying everything and nothing. I almost must consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations. Your Honor, we are contending that the ex ---- for a number of reasons. First, Dr. Karamlu's opinion is not substantial evidence. It's remote in time compared to the severity of Mr. Warren's condition. Second, we do contend that it wasn't specifically identified. Even if it was, though, the existence of Dr. Karamlu's opinion in and of itself is not enough to dispute the treating physician's opinions. Whether or not Dr. Karamlu's opinion constitutes substantial evidence is not enough. There also has to be legitimate reasons presented for rejecting the treating physician's opinions. And if you look at his reasons, they are far from legitimate. Now, let me ask you this. The second decision by the ALJ is rendered on August 20, 2003. And Dr. Karamlu made his examination on December 20, 2000, not quite three years earlier. At what point does Mr. Warren go on 24-hour oxygen? In February 2003, according to Dr. Nguyen, after his hospitalization at that time. So more than two years after Dr. Karamlu's assessment, which might suggest that his assessment of his capacity two years or a little more than two years earlier might be out of date. We would contend that it was stale at best. And at what point do we have examinations and recommendations or evaluations by his treating physicians? On what dates do we have those? Dr. Dorning, in 2002, gives his first assessment, I believe, or detailed assessment. And that's at AR 185 to 191. That's April 2002 is when he filled out the impairment questionnaire, where he specifically set forth what Mr. Warren can do despite his impairment. And I point that out because that is the stated reason the ALJ rejected Dr. Dorning and Dr. Nguyen's assessment, because they did not set forth what Mr. Warren can do despite his impairments. And Dr. Nguyen's assessment was in March of 2003? Correct, Your Honor. And he saw him once after release from the hospital? According to this evidence. So it is just nonsensical for the commissioner to defend that the doctors, the treating doctors did not set forth what he can do despite his impairments. That's the stated reason the ALJ provided for both those opinions, and they specifically did. I don't know how you could be any more specific. But more, what disturbs me most is that he's rejecting these two doctors' opinions, basically because there's, according to him, no objective evidence of a limitation on the ability to sit or stand, no neurological or musculoskeletal deficits. We're not contending that he has a neurological, musculoskeletal impairment. He has respiratory impairments. And his doctors detail that that is why he is so limited. That is why he is limited to them. By that logic, no matter how bad your respiratory condition is, you could work because you don't have a musculoskeletal or neurological impairment. Those are the two main reasons the ALJ has cited for rejecting these two doctors' opinions, and none of them make any sense. I think they're completely arbitrary, and I would contend that they're not supported by substantial evidence and should not be upheld. Well, I'm looking at, I'm now on page 9 of 14 of the ALJ's second decision, where he discusses the reasons why he's rejecting Dr. Dorning's evaluation, and I'm in the last, I think I'm trying to support what you just said, second to the last sentence. Furthermore, no objective evidence for decreased range of motion or neurological deficits to support such severe limitations. Well, I don't see any claim that range of motion or neurological problems is the source of the disability. Correct, Your Honor. That's entirely consistent with what he's saying. That's not my problem. My problem is I got diabetes. My problem is I got lung problems. My problem is my obesity. I've got lots of problems, but these aren't the problems. And the ALJ states, therefore, his recommendations will not be adopted, referring to that specifically. That doesn't make any sense to me, and I guess the government can respond to that one, but I have to say that the reason for rejecting Dr. Dorning doesn't fit with the evaluation and the reasons Dr. Dorning says he's disabled. That is our position, and I would like to reserve a few, some time for rebuttal. All right, go ahead, and we'll call upon Commissioner Astrow. Good morning to the Court. My name is Sarah Ryan, and I'm privileged to represent the Commissioner of Social Security. This is a case involving the question of whether substantial evidence supports the Commissioner's decision and determination that the claimant has not met his burden of bringing forth evidence that he is disabled. And I urge the Court to find, as the district court did, that the claimant did not meet that burden. In this case, the ALJ correctly found that the claimant did not produce sufficient evidence supporting his claim that he was disabled. Now, if the treating physician's evaluations were believed, is that sufficient evidence? No, sir. Because? Because there were insufficient objective clinical and diagnostic tests to support the claimant's claims that he had disabling symptoms. At most, they showed that he was limited, as the ALJ found, to performing a range of sedentary work. No, I'm not sure we're yet on the same page. I view the report and evaluation by both Dr. Dorning and Dr. Nguyen as saying he is disabled, and I think disabled within the meaning of the law. And I wanted to ask you, if we believe their evaluations, their assessments, is he disabled? And I think you then said, well, we don't because there's not enough to support their conclusions. Yes, sir. My question is, if we believe their conclusions, is there enough evidence to show or is that evidence that he is disabled? If you accepted Dr. Dorning's conclusions as to how many hours per day the claimant could sit and stand and walk, is that the question? That's the question. Yes, sir. If that were binding on the commissioner, then that would be correct. Okay. Just to make sure you and I are on the same page here. Yes, sir. If we accept the conclusion of the treating physicians, I think not merely Dr. Dorning but also Dr. Nguyen, if we accept their conclusions, he's disabled. Yes, Your Honor. So the question is, is there enough here to say that he's entitled to reject their conclusions? That would be the question. Okay. Thank you, Your Honor. And why should we reject their conclusions? There was sufficient evidence to support the ALJ's rejection of their conclusions. And what evidence is that? The ALJ rejected it not just on the ground of Dr. Caramelou's contradictory findings. But also because of the insufficiency within the treating physician's own findings, the lack of objective findings. And if I may speak to the question of how the musculoskeletal findings interacts in this case, both the question is, can he perform the sedentary range that the ALJ has found? And sedentary means sitting in this case. Now, to that extent, musculoskeletal findings are relevant. Now, you have said also his ability to sustain work because of the alleged respiratory distress, the shortness of breath, and so forth. And I understand the Court's concern in that regard. At the time of the evaluation, as I understand it, he's on 24 hours oxygen. Yes, sir. And he's weighing something over 300 pounds. And he gets sores on the tops of his feet, sores on the bottoms of his feet. And his testimony, the ALJ decides he's not credible, but his testimony is basically his activities are he watches TV, he reads, and he colors in coloring books. Well, remember the vocational expert's testimony that one of the jobs he could perform with oxygen is sitting at a surveillance monitor, which is just like watching television. And remember also that at his heaviest, he only weighed 15 pounds. He's supposed to be. Excuse me, counsel. What does that mean, sitting at a surveillance monitor? Is that a security job where you're supposed to react if you see something going wrong, that you have to react very quickly in order to phone, to get assistance? Is that what that is? The only thing I know from the record is that it is a sedentary job that can be performed sitting or standing at will. That's the only information we have from the record. The other information we have from the record is that at his heaviest, he weighed only 15 pounds more than he weighed when he was working. And when he was working, was he on 24 hours oxygen? No, sir. That is to say, his pulmonary capacity seems dramatically to have decreased. As far as the other way around, his pulmonary problem seems dramatically to have increased since the time he was working. The pulmonary problems occurred at the time that he ceased working. And then with the use of the oxygen, they are now at the normal oxygen saturation. As the district court observed in its opinion, 96 to 100 percent is the normal range, and his oxygen readings were 95 to 96 percent. So we're talking about a man who weighs somewhere north of 300 pounds, who carries around with him at his work, if he does go to work, an oxygen tank so that he can have oxygen 24 hours a day. Both treating physicians say that he's incapable of doing work. That's that conclusion. And you've said that if that conclusion is supported, that he's incapable. And I'm supposed to say that this ALJ, who's clearly been rebuked the first time around by the Appeals Council, and as far as I can tell, he doesn't do anything else except to write longer and say now for the first time, I don't believe him. That's the evidence on which I'm supposed to support the ALJ? Your Honor, you're supposed to look at the evidence and see whether there is substantial evidence to support the ALJ, not look at the evidence that supports the claimant's claim, but just look and see whether there's evidence, as the district court did, to support the ALJ. But the evidence that supports the ALJ seems to be, in a sense, nonexistent. The evidence that he has is to tear down the affirmative evidence. I'm sorry, Your Honor. As the ALJ pointed out, there's no showing that the treating physicians even understood what the Commissioner's standards of disability are. That's what he said on Dr. Durning. Yes, sir. That's correct. And I pose to the Court that there's no showing that Dr. Nguyen even understood what the Commissioner's disability standards are. We're calling Durning a treating physician. Can you tell me precisely what that means in this case? How many times, over what period? What do we mean when we say treating physician in this case? Well, we accept as a treating physician, any time that a claimant or a person has gone and sought treatment. So it can be as few as one visit. How many visits are we talking about here? Well, with Dr. Nguyen, he was the treating physician in a hospitalization and at least one follow-up visit. And his evaluation is the latest of the three. His evaluation is a March 2003 evaluation? Correct, Your Honor. Right. What do we know, if anything, about this administrative law judge, Mr. Rockland Lyons? I have seen his name on a number of decisions, and that's all I can tell you. Other than that, in the record, all we have is what we see in the record. But I would submit that the Appeals Council has made a remand in this case on grounds that appear to have been technical in nature, and from that, the Court may not make any other inferences. Well, I read the remand, and for the following reasons, they've got six bullet points as to remands for the following issues. This is not an ordinary remand. I've seen a few remands in cases like this. This is not your ordinary remand. This looks to me like a rebuke. Your Honor, I'm sorry. I cannot comment to that. All I can say is that we attempt to correct our own errors, and sometimes they are of a technical nature. And I submit that that is the case in this situation. I submit that there is substantial evidence in this case to support the ALJ's decision. The district court clearly found that there was substantial evidence. And there is so in this case. This man can work in a sedentary job. The vocational expert named three occupations. And so if he's sitting there watching the television monitor and he sees a problem, this guy is expected to do what? Well, the record does not tell us any more than that. There is also the job of cashier two and ticket seller, for which he's qualified to do with the confinement of the oxygen canister and the ability to sit and stand at will to make himself comfortable. So this man is not as disabled as he would have you believe. He is able to do activities at home. Such as? Well, as he said, he colors at home. He is able to move about. He lost his driver's license for economic reasons, not because he was incapable of driving. I mean, ordinarily, we do see these cases from time to time. And ordinarily, when you get a case to say, well, he can do things at home, the things that they do at home is, you know, I can wash dishes. I can mow the lawn with some effort. I can do a little light laundry. I can do the cooking. I can do the shopping. None of that. What he says is, I can sit and watch TV. I can sit and read. And I can, I guess, sit and do coloring books. Well, he does go with his wife to do the shopping. I would say this is not. But this does not strike me as the ordinary case where the activities at home suggest that the man is capable of moving around very much. With respect, Your Honor, though, the question is whether the ALJ's judgment can be sustained by the evidence and not this court's judgment. All right. I understand that. And I submit that under the substantial evidence rule, the court's question is not whether there's evidence to support the claimant's claim at this juncture. The question is whether there is substantial evidence to support the ALJ's decision. Yes, but you don't look at one to the exclusion of the other, do you? I mean, how do we know what's substantial to defeat something unless we look at the something that's supposed to be defeated? At this juncture, the legal question before the court is, is there substantial evidence to support the ALJ's decision? Yes. But the only way you can do that is to look at the whole case. That's correct. I think that's the only point that Judge Fletcher is making. But the court does not engage in second-guessing the ALJ, as the Ninth Circuit has said before. You mean the Ninth Circuit doesn't second-guess anybody? Good. That's good to hear. Do you have anything else you'd like to add? I appreciate the opportunity to appear before you this morning. Thank you. Thank you, counsel. You may respond. Thank you. Thank you. Thank you. A lot of points, I'll try to hit them very quickly. Your Honor, the Dictionary of Occupational Titles refers to surveillance system monitor only in a government setting. So this would be, that position would be a government job that would involve some sort of watch diligence. And now we have millions of those. We have millions of people watching monitors. Yes. And to do so effectively, you have to be able to sustain attention and concentration for full-time work hours, eight hours a day, 40 hours a week. And the passive watching of television at home, particularly when there is no evidence as to the frequency, the duration of that activity, the intensity of that activity, does not correlate at all to being able to do so in a work setting, in a surveillance setting where you might be responsible for the health and safety of others. To state that coloring and watching television equates to work would mean that to exist. If you exist, you can work. The substantial evidence does not support the ALJ's decision. It also has to be substantial evidence that a reasonable person might accept as true and that is a rational interpretation of the evidence. My example of the activities is what we contend is irrational. The treating physicians gave a specific assessment of what Mr. Oren can and can't do. The fact that they don't understand what disability means and whether they say he's disabled or not, yes, I understand that, but that's a separate issue. The judge has already said, well, part of the reason I'm not accepting them is because they did not give a specific assessment of what he can and can't do. So which is it? They did set forth a specific assessment. That's a proper thing for the treating physician to do. That's a preferred source of such an opinion. The ‑‑ I'm sorry. The report here says, the medical consultants at State Agency Disability Determination Service also concluded the claimant was capable of light exertion while avoiding all exposure to fumes, et cetera, et cetera. When did that occur, the State Agency Disability Determination Service report? I would have to check. That is normally a non‑examining physician, however. 10 of 14. Okay. So you've got ‑‑ he says he refers to Caramello, the consultative examiner, and the State Agency Disability Determination. He gives some weight to these opinions. It looks like the DDS physician is normally what they're referring to. It looks like that would be at 176 to 184, and that was in early 2001. So what does he mean when he says claimant's hospitalization, which resulted in Dr. Nguyen's examination, he's received little treatment and his condition has remained relatively stable. What does that mean? Yeah, I find that very disturbing. What the commissioner is stating is that there's not more aggressive ‑‑ if he was that disabled, he'd be getting more aggressive treatment. There's no evidence that more aggressive treatment exists for the claimant's conditions. He is on medication. He is on oxygen. It's more frequent or aggressive treatment. The record does not establish any exists that sound like he could have on the transplant. Well, we also know from the record that he's having intermittent problems with insurance. Yes. So that is, I think, a perfectly plausible reason why people don't go to seek medical attention unless they're headed for the emergency room in a life‑threatening situation. Yes, Your Honor. The ALJ even acknowledges that. And Dr. Dorning points that out as well, that that has been a problem in his maintenance of treatment with the patient. Is he on Medicaid? I would assume he'd be on MediCal. MediCal. Yes. In the state. But I'm very disturbed by their continued persistence in showing that, well, musculoskeletal findings are relevant. The doctors, that is a medical determination. And Dr. Nguyen has specifically set forth, this guy has shortness of breath, he has wheezing, he has fatigue, he has these conditions, that that's why I'm limiting him to this extent. There is no medical determination that somehow musculoskeletal impairments can only lead to inability to sustain sitting and standing for full‑time work hours, eight hours a day, 40 hours a week, and it doesn't make logical sense to a layman either. But we do ask that you reverse the ALJ's determination and grant Mr. Orn social security. And ‑‑ You're asking that we remand with an order to give him what he wants or for another hearing? Correct. Correct. Correct. No more hearings. Well, Your Honor, I don't see any outstanding issues. The medical evidence is well established, and the treating physicians are the perfect source of the assessments about what he can and can't do. They've been very specific. This has been before an ALJ twice already, and he's giving very arbitrary, I would contend, reasons for disregarding them. Thank you, counsel. The case just argued is ordered and submitted, and we're adjourned until tomorrow morning at 9 o'clock. Thank you, Your Honor.
judges: Schroeder, Trott, W. Fletcher